Good morning everyone. We're here today for oral argument. We are going to begin out of order. We're going to begin with case number two. This is Appeal 24-1952 Kinder v. Marion County Prosecutor's Office. We'll first hear from the appellant, Mr. Roberts. Thank you. If it pleases the court, I am Thomas Roberts. I represent the plaintiff Susan Kinder. We are requesting today that this court reverse the district's course granting of summary judgment, and that it be reversed. We believe there were three errors that were made. One, we believe the plaintiff's or the appellant's complaint was timely filed. Two, we believe Marion County Prosecutor's Office is not immune from suit under the 11th Amendment to establish a prima facie case of discrimination. Taking those in order first is timeliness. As it relates to timeliness, Laxvis v. Mayorkas does allow that equitable tolling be reserved for good faith error or situations in which a party has been prevented in some extraordinary manner from being able to file their complaint in time. Particularly in that case, the party made no effort to clarify the actual date of receipt with the EEOC. We believe our case is substantially different from that of Lax, in that we did actually take steps and made efforts to clarify the actual date of receipt with the EEOC. Specifically, we reached out to the director of the EEOC Indianapolis Division, let them know that we were having issues, attempting to, I will back up, we initially attempted to log into the EEOC portal. In doing so, the charge was no longer visible. We were not able to access any of the information. The initial email received only stated simply that a document had been uploaded. It did not state that it was a notice of right to sue or that a final decision had been made. At that point in time, we did reach out to or attempted to reach out to the investigator for the EEOC. It was several days after, I believe it was the month of January or June at that point, we received notice that, verbal issued a notice of right to sue. And if we were unable to do that. When I read Lax and St. Louis, isn't that when the clock starts, when you have actual notice of a final agency decision? I would agree, actual notice. The problem was the email we received, again, did not say there was a notice of right to sue. This court has, well, section 2000E5F1 doesn't specify what form the notice must take. However, this court has held numerous times that that notice must be in writing. We did receive notice in June from the investigator of the EEOC stating, yes, notice of right to sue had been issued. They had closed their investigation. It was unsubstantiated. And if we needed or wanted to view the notice of right to sue, we needed to contact helpdesk. After unsuccessful attempts to reach anyone there, we contacted the director of the EEOC. We specifically asked they reissue the right to sue. We asked that they update the date. And about a week after that, we received an email from a supervisor at the EEOC with a notice of right to sue containing the same notice date. However, it does state in there that you have 90 days from the receipt of this notice. And specifically, it states, I apologize, that receipt generally occurs on the date you or your agent views this document and advised that we keep a copy of when we actually received that notice. The date we received that notice was the date we received the email from the supervisor with that. So while we did have verbal notice, this court has held that it's actual written notice. Otherwise, at any point in time, there could be a communication that a right to sue was issued, and that would start the clock at that point without actually having proof or documentation. There are other cases that talk about, for example, I believe it is McDonald. In that case, he didn't view the charge because he was unable to or lost his password. In this case, we didn't lose our password. We logged into the EEOC portal. The charge was gone. We provided documentation to the EEOC director stating that as well. So we believe that our 90 days started the date that we actually received the notice of right to sue from the supervisor, Mark Fishbeck, pursuant to this court's prior holdings. And that date would have been July 6, 2022 when that was actually issued. So the 90 days that we actually filed our complaint, we filed it within that 90 days. If we were to conclude that the lawsuit is timely, how does your client's case make it through the McDonnell-Douglas criteria? So when we go to the McDonnell-Douglas piece of it, so specifically, as far as we believe that we did identify or show a prima facie case, in order to do so, we have to show background circumstances exist to show an inference that the employer has reason or inclination to discriminate against whites, in this particular case, or evidence of something fishy. We have to show that the plaintiff was meeting their employer's legitimate performance expectations, that they suffered an adverse employment action, and they were treated less favorably than a similarly situated individual who is not a member of their protected class in this particular case. We believe we satisfied all four of those prongs. One, under Muldrow, we don't have to prove that there was some harm regarding an identifiable term or condition of employment. Pursuant to Oncale v. Sundower Offshore, transfer or reassignment can demonstrate pretext. If the plaintiff can show transfer brought about some disadvantaged change in of the reassignment. My client was reassigned to a position of lesser and diminished responsibilities. She was a receptionist and victim advocate. She had actually been transferred to a position where she was just a victim advocate for the Child Advocacy Center. In her new position, she was strictly a receptionist. All she was doing was answering phones, filing papers, and pulling staples. Before that, she was meeting with families, she was providing documentation, she was doing grant work, she was working with databases. Substantially higher level responsibilities than what she had. And the reassignment, we believe, demonstrates the pretext portion of it. Also, as far as something fishy, we believe in part that the court failed to view the facts in the light most reasonable or most favorable to the non-moving party, which would be the plaintiff in this case. Specifically, they took the fact that it was Ryan Mears who ultimately made the decision. However, the depositions from both Salita Scott and Ryan Mears show Ryan Mears fully deferred to Salita Scott. Ryan Mears had no idea what Salita Scott ended up doing with the individuals, where they were transferred to, what their positions were. Allegedly, Kendra was assigned to a newly created role, which was a hybrid position. She went from a grant-funded position to a non-grant-funded position. Ryan Mears had no idea that a new position had ever been created. All of that was documented during his deposition. In addition to that, there were four attorneys that were deposed during the course of this from the prosecutor's office, either current or former. Three of those directly contradict each other, and the facts and what they stated actually occurred, what was known, what was not known. Because of that, from our perspective, there's something very fishy about that, that the prosecutor, chief counsel, and the director of the Child Advocacy Center, all three contradict each other drastically about what was known, when it was known, and how it was known. Scott also stated she had no idea that Kendra had been, her role had changed within the Child Advocacy Center. However, she was copied on numerous emails from the director, the individual over the director, as to the changes, when they were to consist of, and at that time, she and the other two victim advocates were all three in the same role. They would rotate responsibilities as it relates to the front desk. She was reassigned to a cubicle next to the other victim advocates, and was performing the exact same responsibilities. However, her new role was drastically different, and since being assigned to her new role, has not once been assigned a single task that would go with a, or be the role of a victim advocate. Moving to the constitutional claim, Manow obviously requires a showing that the constitutional injury occurred from a department policy or custom. Did you make any such allegation here? We believe that it is from a custom. Specifically, the Salida Scott is the sole individual who was responsible for making the determination, and that the custom was that, at that point in time, they did not have internal HR. She was the one who all employment-related decisions were escalated to, and because of that, she made a decision to go against, or to reassign these individuals. Are there other instances of her doing so, such that it would rise to the level of customer policy? And is that part of the record? I believe it's, I don't believe it's part of the record. We were not able to obtain information, a significant amount of information, as to other incidents where this occurs. We believe this may have been the start of others. Didn't the state's attorney become involved in this at one point? The state's attorney was not involved until we filed our complaint. At that point in time, the Attorney General's office stepped in to represent them. Who made the decision, or the tentative decision, that was never carried out, to, that maybe the best way of handling this was to discharge all three? I apologize, I'm not sure I understand the question. Somebody made a tentative decision, as I recall, that the best way of handling the tension in the office was to discharge all three. I'm not sure what you mean by all three. You mean the two individuals who were... The three women who were involved in this. Okay. It was actually two women that were involved in it that Ryan Mears initiated. And your client. My client and one other individual. And there was another individual as well, wasn't there? There were three. There was a third victim advocate. However, the complaints, she was not a part of this. She had been part of the investigation. She had substantiated, I guess, to an extent... What I'm trying to get at here is you keep saying the HR person was the policymaker for this organization. Seems to me the state's attorney was the person responsible for making policy. Well, the prosecutor deferred to chief counsel. He specifically stated that he wanted them fired. However, he deferred to her to make... That's what I'm trying to get. He said he wanted to fire all of them. The two of them, because there were only two. The third one was not at question. It was just the two of them. That's not clear from my reading of the record. But in any event, they did go to him, and it wasn't until he decided to defer to someone else that the HR person took over. Is that right? He could have retained the power to make this decision. He could have retained the power, yes. So why isn't he the policymaker of the organization? Because he deferred that decision-making to Salida Scott, which I believe, based upon the depositions, was something that he was customary to doing. He was not involved with all the hiring. He did not make the determination related to the transfer. He didn't know anything about their positions. In his deposition, he specifically stated he had no idea what roles they were in, where they were located, the creation of a new position, or anything else. He completely deferred any decision-making, divested himself of any decision-making, and gave that to chief counsel, who also, at that point in time, was solely responsible for HR, and then would contact Marion County HR as it related to the steps to take. I think I've got your point. Thanks. Okay. Thank you. Mr. Roberts, is there a place on the record where it says that the prosecutor's office's employees are paid by the county rather than the state? Yes, specifically.  I don't know exactly where it is, but both within the record, Susan Kinder is paid by Marion County. Salida Scott is paid by Marion County. The only individual I'm aware of that's actually paid by the state of Indiana is Ryan Mears. I know charging attorneys, for example, who work for the prosecutor's office, they are not state employees. They are employed solely by Marion County. They go through Marion County HR. Marion County sets all their hours. They set the work schedule, holidays, and everything else. Who hires and fires the lawyers in the office? To my understanding, Salida Scott is involved. That is her responsibility. Well, that's her responsibility as administrator, but who makes the decision? For whom do they work? It depends on where they are hired within the organization. So, for example, a charging attorney does not report to Ryan Mears. A charging attorney reports to somebody else that may be several layers down. Ryan Mears will have individuals underneath him who are then responsible for the deputy prosecuting attorneys. Salida Scott's chief counsel, the director of the Child Advocacy Center, reported to another individual who then reported up to Ryan Mears. And if there's no other questions, I would reserve the rest of my time for rebuttal. Very good. Thank you, Mr. Roberts. Thank you. Ms. Recker, we'll move to you now for argument on behalf of the appellee. Thank you, and may it please the court. The Marion County prosecutor's office asks that this court affirm the summary judgment order for three primary reasons. First, Kinder's complaint was not timely filed because it was not filed within the 90-day deadline. Second, the evidence shows that the Marion County prosecutor's office did not discriminate against Kinder on the basis of her race. And finally, the Marion County prosecutor's office is not suable under Section 1983 because it is an arm of the state. Ms. Recker, there are a number of references in the record to the prosecutor's office's positions being grant funded. Where does that grant money come from? Is it federal, state? Your Honor, I believe it's federal funding. I'm not for sure on that, but I think it's federal funding. For example, a national domestic violence type grant or a gun interdiction grant. That federal money would go to MCPO, the prosecutor's office. They would then either be able to hire new support staff and or attorneys, but they have to certify that they're working on those types of cases, correct? That's correct, yes. Are you aware of any state funding or state grant funding or would it always be federal grant funding? I'm not aware of any state funding that funded the work at the advocacy center. Thank you. So, turning to the timeliness issue. Kinder received, her counsel received an email on April 28th informing him that a document had been uploaded to the EEOC portal. And under this court's decision in Lacks, as well as the Eighth Circuit's decision in McDonald, the April 28th deadline was enough to trigger the 90-day time frame. And so, based on that time frame, her complaint would have been due by July 27th and she did not file it until October 4th. The district court gave her a little bit of leniency and considered the June 15th date as the triggering date. And that's when her counsel had received another email indicating that the document that was uploaded to the portal was, in fact, the notice and right to sue letter. And so, the district court held that that date was enough to trigger the deadline and her complaint then would have been due by September 13th. But again, she didn't file it until October 4th. Equitable tolling should not apply in this case. And actually, Kinder never requested equitable tolling apply. Instead, she asserted only that her complaint was timely. And so, the reason equitable tolling shouldn't apply here is because there's no evidence that her counsel actually reached out to the help desk to try to secure the document earlier. There's no evidence that he tried to discuss with the EEOC when the 90-day deadline began. And also, by the time the July 27th deadline was up, her counsel actually had the document. He was able to view the document. And he provided no explanation as to why he couldn't have filed the complaint within that timeframe. Do we know, was the document boilerplate? Is it the same thing that goes to everybody for a right to sue? Yes, the document just contains the determination that the EEOC has basically done with the case, that she can proceed to court, and that she has 90 days to file. It's just kind of boilerplate language. So, turning to the discrimination claim, even if the court were to consider the merits, Kinder failed to make a prime officious showing under the McDonnell-Douglas test that the reassignment was due to her race. So, the factors that the court needs to consider that Kinder failed to show were that there was evidence of something suspicious or fishy going on, that she was meeting her employer's legitimate expectations, that there was an adverse employment action, and that she was treated less favorably than a similarly situated comparator. Kinder failed to argue below that she was meeting her employer's legitimate expectations. So, she has waived that argument. But also, there's no evidence here that there was anything fishy or suspicious. Kinder and Richardson didn't get along. Director Warner characterized their dynamic as toxic. And so, in order to solve that issue, she reassigned them as equal duties, sharing desk advocate, which is a receptionist, meeting advocate, and at-home advocate between the three. But while that was going on, Richardson had filed a complaint against Kinder alleging harassment. And so, Chief Counsel Scott had started investigating that complaint. And she learned that the two just couldn't get along, that it was creating a toxic environment, and that it went both ways. It wasn't one or the other. So, in order to be fair to both of them, she talked to Prosecutor Mears about reassigning both of them outside of the Child Advocacy Center. Prosecutor Mears is the one who actually made the decision. Initially, he did want to terminate both of them. But Scott had, I guess, advocated for both of them to keep them on in the prosecutor's office, and he allowed her to do that. So, it was actually Prosecutor Mears who made the decision, but it was based on the recommendation of Chief Counsel Scott. And I'd like to add that Prosecutor Mears is white, so he's the same race as Kinder, which I think also supports that there was nothing fishy going on. The evidence also shows that Chief Counsel Scott was not aware of this recent temporary change in the duties that Kinder and Richardson were doing. She believed that Kinder was mainly a receptionist, and that she also had some backup advocate duties. So, she was not aware that Kinder was also primarily taking on an advocacy role. Kinder had spent less time as an advocate than Richardson. But is it fair to say that they're both returned to the same spot? Yes. Why do you say that? I should say the same position. The same position, yes. When Director Warner started in March of 2021, Kinder was mainly at the desk. She was handling the desk duties. You know, when someone came into the office, she would call back to the prosecutor's office, the prosecutors, if they needed to come out. She was handling the mail, things like that. It was Richardson and Hinton that were mainly handling the advocacy duties. So, the minor, the change from them all kind of having equal duties was in response to this toxic environment that was happening. And Director Warner actually testified in her deposition that she would try it, you know, try the new arrangement, see how it goes. So, there's no evidence that it was a permanent arrangement. It certainly, there's no evidence that this was a promotion. She was just trying to fix the environment that was happening while Chief Counsel Scott was investigating the harassment allegations by Richardson. Turning to the third issue, Kinder's Section 1983 complaint cannot proceed against the Marion County Prosecutor's Office because it's not a person that is suable under Section 1983. The prosecutor's office is an arm of the state of Indiana. As this court held in Jones, the office is an arm of the state because it was constitutionally created. It plays a significant role in the judicial system. It actually has an inseparable role with the judiciary. Does Jones map directly onto this case or are there some differences? I think it does. And the reason for that is that there's really no separation between the elected prosecutor and the office. I mean, the office is there to serve the elected prosecutor and to fulfill his statutory duties. So, there's really no distinction between the two. And so, I think Jones fits squarely with this case. And then if you look at the way Indiana treats prosecutor's offices as well, it treats them as part of the state entity. And to answer your question I think you had earlier, the state does also pay not only the elected prosecutor but also the chief deputy prosecutors. And there's some statutes we cited in our brief that talk about that. So, the chief prosecutor, the supervisor is directly under that chief prosecutor and then at some point it drops below the line to be county. Yes, that's correct. Who hires the attorneys in the office? The prosecutor has hiring and firing responsibility, I believe. The prosecutor does? Yes. So, he can get people who share his or her responsibilities or views with respect to prosecutorial discretion? Yes. If he has a trial charging prosecutor who does not share his views on who should be charged, who shouldn't, he can get rid of that prosecutor. Is that right? Yes, I suppose. Yes. You suppose? I mean, does he have the authority or not? Yes, he has the authority to fire and hire. Is there a difference between the structure of the Marion County Prosecutor's Office and other state prosecutors' offices in the state of Indiana? The Marion County Prosecutor's Office is significantly larger than most of our state. No, I meant in terms of its statutory structure. No, Your Honor. No. And then also, the Attorney General's Office represents the prosecutor, the chief deputy, and all of the deputy prosecutors if they were sued for claims arising out of their work. So, when you consider all of these factors, the Marion County Prosecutor's Office is an arm of the state, and it's not suable under Section 1983. So, Kinder's 1983 claim fails on that ground, and then also because there's no evidence of discrimination. The 1983 claim is viewed the same as the Title VII claim. Does this court have any more questions? No, thank you, Ms. Recker. Okay, thank you. Thank you. Mr. Roberts, we'll go back to you now for rebuttal argument. I will try to be brief here. So, as it relates to timeliness, the appellant or plaintiff did rely upon the EEOC in the wording of the Notice of Right to Sue that was provided. In this case, it would have been to a detriment of the plaintiff using the plain language of the Notice of Right to Sue. As it relates to the prosecutor's office, they allege the prosecutor's office is created by the Constitution of Indiana. Article VII, Section 16 only creates the prosecutor's role in states, and a prosecutor for each judicial area shall be elected by the constituents. It does not create the prosecutor's office. This opens the door if the prosecutor's office is immune under 1983. It opens the door for the same argument in 1981 claims, arguments which are already starting to come up based upon solely the district court's finding in this particular case. The employer's legitimate expectations was not waived. It is clearly in there that Kinder was meeting the expectations. Scott said she was a good employee. Warner moved her into that position because she was capable of doing so. Richardson was actually going to be terminated. Instead, she got promoted into a position where she received a private office and was a victim advocate. And Kinder was actually the first victim advocate within CAC. I apologize. That is the end of my time. With the exception of Jones v. Cummings, it is very different than this particular case because that's solely about a prosecutor being able to be sued in their official capacity as part of the judicial process by bringing criminal matters. It does state that they have limited immunity. I believe qualified immunity when it relates to administrative functions or specifically the investigation functions that they do not have absolute immunity. Thank you very much, Mr. Roberts. Thank you, Ms. Recker. The case will be taken under advisement. Thank you very much.